**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **Academy Medical, Inc.,**<br>2600 North Loop West<br>Suite 315<br>Houston, Texas 77092<br><br>　　　Plaintiff<br><br>v.<br><br>**Concordance Healthcare Solutions, LLC**,<br>85 Shaffer Park Drive<br>Tiffin, Ohio 44883<br><br>Serve registered agent:<br>　　CT Corporation System<br>　　4701 Cox Road, Suite 285<br>　　Glen Allen, Virginia 23060<br><br>　　Defendant | Civil Case No. _____ |

**COMPLAINT**

Plaintiff Academy Medical, Inc. ("Academy Medical") files this Complaint for declaratory judgment, breach of contract, and fraudulent inducement against Defendant Concordance Healthcare Solutions, LLC ("Concordance"), alleging as follows:

**PARTIES**

1.　　Academy Medical is a Florida corporation with its principal office located in Houston, Texas.

2.　　Concordance is a Delaware limited liability company with its principal office located in Tiffin, Ohio. Concordance is registered to transact business in the Commonwealth of Virginia. Academy Medical has no knowledge of the identities of Concordance's members but has no reason to believe that any are citizens of Florida or Texas.

**JURISDICTION AND VENUE**

3.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because Academy Medical and Concordance are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      Venue is proper in this district under 28 U.S.C. § 1391(b)(3) because in the agreement at issue in this case, identified in Paragraph 10 below and attached hereto as Exhibit 1, the parties agreed as follows: "This Agreement shall be governed by the laws of the Commonwealth of Virginia, with the exception of its conflicts of laws provisions, *and all controversies or disputes arising out of this Agreement shall be heard in either the state or federal courts in the State of Virginia.*" Exhibit 1, § 6.8 (emphasis added). Concordance is registered to transact business in Virginia and, on information and belief, regularly transacts business in this judicial district.

**RELEVANT FACTS**

**A.      The Parties**

5.       Academy Medical is a distributor of medical products and supplies to agencies of the United States government. It enters into distribution agreements with Original Equipment Manufacturers of medical products (OEMs) pursuant to which the OEMs authorize Academy Medical to distribute their products to government agencies under established contracting vehicles—such as the Federal Supply Schedule—or on an open-market basis.

6.      Academy Medical is certified by the United States Small Business Administration as a Service-Disabled Veteran-Owned Small Business (SDVOSB).

7.      Concordance is a provider of medical product distribution services to commercial and government healthcare systems.  In the federal government space, Concordance acts as a

Medical Surgical Prime Vendor (MSPV), in which capacity it stocks and distributes medical supplies to Department of Veterans Affairs (VA) medical facilities, which are required to purchase medical supplies through the MSPV program when available through the program. As part of this process, Concordance often enters into stocking and distribution agreements with medical product OEMs.

8.      In or around September 2023, Concordance entered into a licensing agreement with GovLogi, LLC, a consulting firm that provides strategic contract solutions for federal contractors and agencies. GovLogi had developed a proprietary program, designated as the "Prime Vendor+$^{TM}$" program (the "PV+ program"), to market, sell, and distribute medical supplies to VA facilities through socioeconomic small business contract holders (including SDVOSBs like Academy Medical), to which the VA is required under 38 U.S.C. § 8127(d) to give priority. The PV+ program utilizes a SaaS (Software as a Service) platform called Flightline tailored to federal procurement workflows.

9.      Pursuant to its agreement with GovLogi, Concordance licensed the PV+ program from GovLogi. At the same time, Concordance also entered into a licensing agreement with Flightline, LLC for use of the Flightline platform as part of the PV+ program.

**B.      The Agreement**

10.      Shortly thereafter, on or about November 10, 2023, Concordance entered into a Participating Dealer Agreement with Academy Medical for the PV+ program (the "Agreement"). *See* Exhibit 1.

11.      Under the Agreement, Concordance was required, among other things, to:

—maintain a license agreement with Flightline for the program software platform;

—maintain an online storefront of OEM products on the Flightline platform (the "Online Storefront");

—process orders made by VA buyers through the Online Storefront;

—provide Academy Medical with a list of products available from Concordance's partner OEMs to enable Academy Medical to establish agreements with those OEMs to offer products through the PV+ program;

—leverage its OEM relationships to generate letter of supply agreements between its OEMs and Academy Medical for the sale of products through the PV+ program; and

—maintain and remain in compliance with the Flightline license agreement to use the PV+ program with other SDVOSB suppliers.

*See* Exhibit 1, §§ 1.2, 1.4, 1.5, 1.10, 1.11, and 1.15.

12.     The term of the Agreement was five years. *See* Exhibit 1, § 3.1. For its part, Academy Medical was required to recruit OEMs for participation in the PV+ program. *Id.*, § 2.11. Academy Medical was to introduce at least three OEMs to the program each year of the Agreement and maintain a 5% sales growth quarter-over-quarter in the second, third, fourth, and fifth years. *Id.*, § 2.11.

13.     The Agreement included an attorney fee provision. Section 6.8 states in pertinent part, "The prevailing party in any arbitration or suit shall be entitled to its reasonable attorney fees." *See* Exhibit 1, § 6.8.

### C.     Concordance's breach of the Agreement

14.     The Flightline platform was in place and operational within a month of the Agreement's signing in November 2023. In addition, Academy Medical had by then provided Concordance with an initial listing of OEM products to be included in the program catalog to be listed on the Online Storefront for access by VA buyers.

15.     Unfortunately, as described below, Concordance failed to meet its obligations under the Agreement.

16. First, Concordance did not make the Online Storefront accessible to VA buyers until June 2025, more than a year-and-a-half after the Agreement was signed. *See, e.g.,* Exhibit 2, at 1 (6/2/25 email from Jordan Beacorn, Director of VA Sales at Concordance, to Academy Medical stating, in relevant part, "the final test order was successful *and we are going live with PV+ this week*") (emphasis added).

17. Second, Concordance did not begin to issue log-in credentials for the Online Storefront to VA buyers until June 2025. *See, e.g.,* Exhibit 3, at 2 (6/3/25 email from Concordance to Academy Medical stating, in relevant part, "We are getting ready to go live on the PV+ Catalog … I wanted to verify you would still like the below users set up for VA Dallas & Temple set up with catalog access"); Exhibit 4, at 1 (6/10/25 email from Concordance to Academy Medical stating, in relevant part, "I copied you in on the welcome to Michael Young at the VA Cheyenne this morning. He should have the website invitation in his in box … .").

18. Third, even after these delays in both setting up the Online Storefront and providing log-in credentials, Concordance provided credentials to VA buyers on only a limited basis, and it then ignored or failed to process orders through the Online Storefront from these buyers.

19. Two examples illustrate the allegations in Paragraph 18. In March 2025, Academy Medical obtained authorization to provide a PV+ catalog of OEM products to buyers at the VA's Columbia, South Carolina Medical Center. Concordance delayed sending the necessary log-in information to the buyer, and it then failed to acknowledge orders from the buyer.

20. Similarly, in July 2025, Academy Medical arranged for VA buyers in Durham, North Carolina to place an order through the PV+ program. Concordance failed to fulfill the order and canceled the request, leading the buyer to suspend its use of the PV+ program. *See* Exhibit 5,

5

at 1 (8/26/25 email from Concordance to Academy Medical stating that the order "was never fulfilled and has been cancelled").

21.    From the date the Agreement was signed in November 2023 to August 26, 2025, when, as discussed below, Concordance purported to terminate the Agreement, Concordance failed to fulfill a single order for an Academy Medical product through the PV+ program.

22.    Instead of fulfilling orders as required under the Agreement, Concordance arranged for VA buyers to order products from Concordance through direct open-market orders, which enabled Concordance to capture product sales without compensating Academy Medical under the Agreement. VA procurement data show that Concordance actively solicited and completed direct open-market orders for Academy Medical products from VA buyers instead of processing orders through the Online Storefront.

**D.    Concordance's purported termination of the Agreement**

23.    On August 26, 2025, Concordance sent Academy Medical a letter purporting to terminate the Agreement for cause under Section 3.2.2 of the Agreement. *See* Exhibit 6. Section 3.2.2 of the Agreement states in pertinent part:

> Either Party may terminate this Agreement for cause upon a material breach of this Agreement by the other Party, provided that it has provided the alleged breaching Party with prior written notice of such alleged breach, and at least thirty (30) days to cure the alleged breach.

*See* Exhibit 1.

24.    Concordance asserted in its letter that Academy Medical was in default under Section 2.11 of the Agreement because, Concordance claimed, Academy Medical had introduced only two OEMs to the PV+ program and had failed to achieve 5% quarter-over-quarter sales growth. *See* Exhibit 6. Concordance claimed that the defaults were "not reasonably curable" under the Agreement. *Id*.

25. Neither of Concordance's claims provided a legitimate basis for terminating the Agreement.

26. First, as of August 26, 2025, the date of Concordance's letter, Academy Medical had recruited at least four OEMs for the PV+ program: companies called 3M, Solventum, Owens & Minor/Medichoice, and Halyard. Execution of supplier agreements with these OEM partners satisfied Academy Medical's obligations under Section 2.11 of the Agreement.

27. Second, any deficiency in Academy Medical's recruiting efforts or in its sales growth was the direct result of Concordance's failure to meet its obligations under the Agreement, which frustrated Academy Medical's ability to perform. As discussed above, Concordance failed to make the Online Storefront accessible to VA buyers for more than a year-and-a-half after the Agreement was signed, even though (i) the Flightline software platform was in place and available to execute the PV+ program within one month of the Agreement's signing and (ii) Academy Medical had by then provided Concordance with an initial listing of its products to be included in the program catalog. Concordance also failed to issue log-in credentials to VA buyers until June 2025, and, even then, provided log-in credentials to VA buyers on a limited basis. It then ignored or refused to process orders through the Online Storefront from such buyers and improperly diverted sales to itself outside the PV+ program.

28. In essence, Concordance's stated position was that Academy Medical had incurably breached the Agreement by failing to meet certain performance metrics in the *two months* after Concordance finally set up the Online Storefront and started providing credentials to VA buyers.

29. Before it sent the termination letter, Concordance never suggested that Academy Medical had breached the Agreement, much less that such breach was "not reasonably curable." (In fact, the benchmarks relied on by Concordance in its termination letter concerned Year 2 of

the Agreement, which did not end until several months after the letter was sent.) To the contrary, in April 2025, a few months before the termination letter was sent, Concordance and Academy Medical amended the Agreement to modify the terms of the parties' allocation of revenue under the Agreement. *See* Exhibit 7. The amendment increased the fee to which Concordance would be entitled under the Agreement "for its performance of all warehousing activities, distribution activities, and Prime Vendor+ Administration." *Compare* Exhibit 1, at 8 (Ex. B), and Exhibit 7.

30. And, on August 13, 2025, *just 13 days before Concordance sent its termination letter*, Jordan Beacorn, Direct of VA Sales at Concordance, told John Campbell of Academy Medical that Concordance was pleased with Academy Medical's efforts to market and implement the PV+ program. Because Academy Medical was the only SDVOSB actively promoting the PV+ program, Beacorn also told Campbell that Concordance would provide Academy Medical with a list of products available from Concordance's OEM partners to enable Academy Medical to market the program to them. *See* Exhibit 8 (8/26/25 email from John Campbell to Jordan Beacorn stating, "Hey Jordan, I wanted to follow up on our last conversation about getting access to additional SKU's available through PV+. When you can, please send me an updated Excel sheet with the sku's that will be aligned to Academy Medical moving forward.").

31. It is evident from Concordance's conduct as described in this Complaint— including its failure to make the Online Storefront accessible to VA buyers until more than a year-and-a-half after the Agreement was signed; its failure to provide log-in credentials to VA buyers until more than a year-and-a-half after the Agreement was signed; its failure to process orders through the Online Storefront from VA buyers; its active solicitation of direct open-market orders for Academy Medical products from VA buyers instead of processing orders through the Online Storefront; and its attempt to terminate the Agreement for alleged nonperformance *only two*

*months* after it set up the Online Storefront and started providing credentials to VA buyers—that Concordance never intended to perform under the Agreement, including at the time the Agreement was executed in November 2023. Instead, Concordance entered into the Agreement solely to facilitate its access to open-market orders from Academy Medical's suppliers, in order to benefit itself while depriving Academy Medical of revenue to which it was entitled under the Agreement.

32.     On October 1, 2025, Academy Medical sent a letter to Concordance stating that Concordance had no basis to terminate the Agreement and demanding that Concordance formally withdraw its August 26 notice of termination, cure its breaches of the Agreement, and affirm its commitment to the terms of the Agreement. *See* Exhibit 9. By letter dated October 22, 2025, Concordance refused. *See* Exhibit 10.

### E.     Academy Medical's damages from Concordance's breaches of the Agreement and fraudulent conduct

33.     Concordance's breaches of the Agreement and fraudulent actions have caused Academy Medical significant harm. As of August 26, 2025, Academy Medical had incurred at least $2,000,000 in business development costs, including but not limited to payroll and business travel expenses, to market the PV+ program to OEMs and VA buyers. These costs would not have been incurred but for Concordance's express commitment to the PV+ program in the Agreement and its repeated assurances to Academy Medical since the Agreement was signed that it was committed to the program.

34.     In addition, the value of the open-market orders Concordance pursued while spurning its contractual obligations to and misleading Academy Medical is at least $9,700,000. Thus, based on a 10% profit margin, Concordance has wrongfully diverted at least $970,000 to which Academy Medical is entitled under the terms of the Agreement.

9

## COUNT I
### Declaratory judgment (28 U.S.C. § 2201)

35. Academy Medical incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

36. There is an actual controversy concerning the legal effect of Concordance's August 26, 2025, notice of termination of the Agreement. A real and substantial dispute exists between Academy Medical and Concordance as to whether the August 26, 2025, notice identified any valid legal basis for terminating the Agreement for cause.

37. As stated above, Concordance asserted in its August 26, 2025, letter that Academy Medical was in default under Section 2.11 of the Agreement because, Concordance claimed, Academy Medical had introduced only two OEMs to the PV+ program and had failed to achieve 5% quarter-over-quarter sales growth. *See* Exhibit 6. Concordance claimed that the defaults were "not reasonably curable" under the Agreement. *Id*.

38. As stated above, it is Academy Medical's position that none of the bases identified in Concordance's letter provided a legitimate basis for terminating the Agreement.

39. First, as of August 26, 2025, Academy Medical had recruited at least four OEMs for the PV+ program. Execution of supplier agreements with these OEM partners satisfied Academy Medical's obligations under Section 2.11 of the Agreement.

40. Second, any deficiency in Academy Medical's recruiting efforts or in its sales growth was the direct result of Concordance's failure to meet its obligations under the Agreement, which frustrated Academy Medical's ability to perform. Concordance failed to make the Online Storefront accessible to VA buyers for more than a year-and-a-half after the Agreement was signed, even though (i) the Flightline software platform was in place and available to execute the PV+ program within one month of the Agreement's signing and (ii) Academy Medical had by then

10

provided Concordance with an initial listing of its products to be included in the program catalog. Concordance also failed to issue log-in credentials to VA buyers until June 2025, and, even then, provided log-in credentials to VA buyers on a limited basis. It then ignored or refused to process orders through the Online Storefront from such buyers and improperly diverted sales to itself outside the PV+ program.

41.    Third, Academy Medical was entitled under Section 3.2.2 of the Agreement to "at least thirty (30) days to cure" any alleged breach of the Agreement. *See* Exhibit 1. To try to get around this, Concordance claimed in its August 26, 2025, letter that Academy Medical's alleged breaches were "not reasonably curable," even though (i) the benchmarks relied on by Concordance in its letter concerned Year 2 of the Agreement, which did not end until several months after the letter was sent and (ii) it had been ***just two months*** since Concordance finally set up the Online Storefront and started providing credentials to VA buyers.

42.    Academy Medical raised these points with Concordance shortly after receiving the August 26, 2025, letter, but Concordance refused to withdraw its notice of termination or affirm its commitment to the Agreement. *See* Exhibits 9 and 10.

**WHEREFORE**, Academy Medical requests that, for the reasons set forth above, this Court find and declare that none of the purported reasons for terminating the Agreement identified in Concordance's August 26, 2025, letter provides a valid basis for terminating the Agreement for cause under Section 3.2.2 of the Agreement; that Concordance's August 26, 2025, notice of termination was and is of no legal force or effect; and that Academy Medical is entitled to an award of its reasonable attorney fees under Section 6.8 of the Agreement.

## COUNT II
### Breach of contract

43.     Academy Medical incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

44.     The Agreement is a valid, legally enforceable contract.

45.     Concordance breached the Agreement by (i) failing to make the Online Storefront accessible to VA buyers until more than a year-and-a-half after the Agreement was signed; (ii) failing to provide log-in credentials to VA buyers until more than a year-and-a-half after the Agreement was signed; (iii) failing to process orders through the Online Storefront from VA buyers; (iv) actively soliciting direct open-market orders for Academy Medical products from VA buyers instead of processing orders through the Online Storefront; and (v) purporting to terminate the Agreement *only two months* after it set up the Online Storefront and started providing credentials to VA buyers.

46.     As a reasonable, foreseeable, and direct result of these breaches of the Agreement by Concordance, Academy Medical has been damaged in an amount to be determined at trial, but in no instance less than $3,000,000.

**WHEREFORE**, Academy Medical requests that this Court find in Academy Medical's favor and against Concordance on this Count II and award Academy Medical compensatory damages in an amount to be determined at trial, but in no instance less than $3,000,000; pre- and post-judgment interest thereon; reasonable attorney fees under Section 6.8 of the Agreement; and such other and further relief as may be just and proper.

## COUNT III
### Fraudulent inducement

47.    Academy Medical incorporates by reference the allegations set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

48.    Under Virginia law, "if a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud." *SuperValu, Inc. v. Johnson*, 276 Va. 356, 368, 666 S.E.2d 335, 342 (2008).

49.    It is evident from Concordance's conduct as described in this Complaint—including its failure to make the Online Storefront accessible to VA buyers until more than a year-and-a-half after the Agreement was signed; its failure to provide log-in credentials to VA buyers until more than a year-and-a-half after the Agreement was signed; its failure to process orders through the Online Storefront from VA buyers; its active solicitation of direct open-market orders for Academy Medical products from VA buyers instead of processing orders through the Online Storefront; and its attempt to terminate the Agreement for alleged nonperformance ***only two months*** after it set up the Online Storefront and started providing credentials to VA buyers—that Concordance never intended to perform under the Agreement, including when it signed the Agreement in November 2023. Instead, Concordance entered into the Agreement solely to facilitate its access to open-market orders from Academy Medical's suppliers, in order to benefit itself while depriving Academy Medical of revenue to which it was entitled under the Agreement.

50.    Because when it signed the Agreement Concordance never intended to actually perform, the promises made by Concordance in the Agreement were misrepresentations of material fact. Academy Medical reasonably relied to its detriment on those misrepresentations, incurring at least $2,000,000 in business development costs to market the PV+ program to OEMs and VA

13

buyers. These costs would not have been incurred but for Concordance's express commitment to the PV+ program in the Agreement.

51.    As a reasonable, foreseeable, and direct result of Concordance's fraudulent conduct, Academy Medical has been damaged in an amount to be determined at trial, but in no instance less than $3,000,000.

52.    Because Concordance intentionally deceived Academy Medical for its own financial gain, an award of exemplary and punitive damages in the amount of $350,000 is justified.

**WHEREFORE**, Academy Medical requests that this Court find in Academy Medical's favor and against Concordance on this Count III and award Academy Medical compensatory damages in an amount to be determined at trial, but in no instance less than $3,000,000; exemplary and punitive damages in the amount of $350,000 to make an example of Concordance and to deter others from similar conduct; pre- and post-judgment interest; reasonable attorney fees under Section 6.8 of the Agreement and applicable law; and such other and further relief as may be just and proper.

Respectfully submitted,

/s/ David C. Rohrbach
David C. Rohrbach, Esq. (Va. Bar No. 90396)
Edward S. Rosenthal, Esq. (Va. Bar No. 15780)
ROHRBACH ROSENTHAL LLP
124 S. Royal Street
Alexandria, Virginia 22314
Tel: (703) 304-2633
dcrohrbach@rrlaw.law
esrosenthal@rrlaw.law

*Counsel for Plaintiff Academy Medical, Inc.*

## Jury Demand

Academy Medical demands a trial by jury on all triable issues.

14